Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:      (916) 447-8336
E-Mail:         mark@markmerin.com
                paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF MICHAEL PRINCE,
ELANO COSTELLO, DONNY COSTELLO,
M.C., I.C., D.C., J.C., SOPHIA COSTELLO,
and VALERIE PRINCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE, | Case No. |
| | **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20, | |
| Defendants. | |

## INTRODUCTION

43-year-old MICHAEL PRINCE was denied necessary medical treatment by jail staff as a pretrial detainee at the Sacramento County Main Jail in custody of the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, resulting in his death on July 8, 2023.

1

## JURISDICTION & VENUE

1.      This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.      On July 31, 2023, the ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., and SOPHIA COSTELLO submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2300949.)

5.      On October 30, 2023, the COUNTY OF SACRAMENTO issued a notice of rejection of claim.

6.      By September 14, 2023, the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed or refused to act on the claim.

## PARTIES

7.      Plaintiff ESTATE OF MICHAEL PRINCE appears by and through real-party-in-interest Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C., the biological children of MICHAEL PRINCE, who bring this action pursuant to California Code of Civil Procedure § 377.30. Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C. bring this action as the successors-in-interest on behalf of MICHAEL PRINCE. Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C.'s declarations regarding status as the successors-in-interest to MICHAEL PRINCE are attached, pursuant to California Code of Civil Procedure § 377.32.

2

8.      Plaintiff ELANO COSTELLO is a resident of the State of California, County of Sacramento. Plaintiff ELANO COSTELLO is the biological son of MICHAEL PRINCE. Plaintiff ELANO COSTELLO brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of himself.

9.      Plaintiff DONNY COSTELLO is a resident of the State of California, County of Sacramento. Plaintiff DONNY COSTELLO is the biological son of MICHAEL PRINCE. Plaintiff DONNY COSTELLO brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of himself.

10.     Plaintiff M.C. is a resident of the State of California, County of Sacramento. Plaintiff M.C. is the biological son of MICHAEL PRINCE. Plaintiff M.C. brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of himself.

11.     Plaintiff I.C. is a resident of the State of California, County of Sacramento. Plaintiff I.C. is the biological son of MICHAEL PRINCE. Plaintiff I.C. brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of himself.

12.     Plaintiff D.C. is a resident of the State of California, County of Sacramento. Plaintiff D.C. is the biological daughter of MICHAEL PRINCE. Plaintiff D.C. brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of herself.

13.     Plaintiff J.C. is a resident of the State of California, County of Sacramento. Plaintiff J.C. is the biological son of MICHAEL PRINCE. Plaintiff J.C. brings this action in a representative capacity, as successor-in-interest on behalf of MICHAEL PRINCE; and in an individual capacity, on behalf of himself.

14.     Plaintiff SOPHIA COSTELLO is a resident of the State of California, County of Sacramento. Plaintiff SOPHIA COSTELLO is the spiritual spouse of MICHAEL PRINCE, though the couple were never legally married. Plaintiff SOPHIA COSTELLO brings this action in an individual capacity, on behalf of herself.

3

15.     Plaintiff VALERIE PRINCE is a resident of the State of California, County of Sacramento. Plaintiff VALERIE PRINCE is the biological mother of MICHAEL PRINCE. Plaintiff VALERIE PRINCE brings this action in an individual capacity, on behalf of herself.

16.     Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant COUNTY OF SACRAMENTO is a "public entity," pursuant to California Government Code § 811.2.

17.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT located in the State of California, COUNTY OF SACRAMENTO. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity," pursuant to California Government Code § 811.2.

18.     Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

19.     Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. is and was, at all times material herein, a Maryland corporation licensed to do business in California, with their corporate headquarters located in Columbia, Maryland.

20.     Defendant COLLEEN JACOBSON is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant COLLEEN JACOBSON is sued in an individual capacity.

21.     Defendant SWARN SHARMAN is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant SWARN SHARMAN is sued in an individual capacity.

22.     Defendant NKEM AYENI-AARONS is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, acting within the scope of employment and under color of state law. Defendant NKEM AYENI-AARONS is sued in an individual capacity.

23.     Defendant TAMRA SCOTT is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant TAMRA SCOTT is sued in an individual capacity.

24.     Defendant RUBY LEMOS is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant RUBY LEMOS is sued in an individual capacity.

25.     Defendant DOUGLAS CANLAS is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant DOUGLAS CANLAS is sued in an individual capacity.

26.     Defendant LORI BORREGO is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant LORI BORREGO is sued in an individual capacity.

27.     Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and/or Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and

5

correct names and identities will be substituted when ascertained.

**GENERAL ALLEGATIONS**

28.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

29.     On information and belief, Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. was directly responsible for staffing, training, supervising, and following certain policies and customs at the jail. Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. provided licensed, qualified physicians and nurses on a contract basis to Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, and employed or was responsible for medical staff at the jail, including Defendants SWARN SHARMAN, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, and DOE 11 to 20.

30.     On July 2, 2023, in the morning, MICHAEL PRINCE was booked into the custody of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER at the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

31.     MICHAEL PRINCE was booked into custody as a pre-trial detainee, with housing recommendations: "Withdrawal Management - DETOX RISK"; "Medical Expedite 2 East"; "General Population with Accommodations"; and "Lower Bunk."

32.     Madeleine Hilton reported: "Pt reports using fentanyl every other day. Last used 7/1/23. Pt reports hx of withdrawals."; "speech slurred/slow"; "slight shuffling gait"; "Do you use opiates? such as Heroin, Fentanyl, Methadone ETC[:] Yes"; "gabapentin, seroquel, metformin -- pt reports taking PM meds on 7/1/23"; "Diabetes [¶] Type? 2"; "Active Problems: Serious Mental Illness (SMI) (ICD10-F99), Noncompliance with medications (ICDV15.81) (ICD10-Z91.14), Neuropathy, peripheral due to diabetes (ICD-356.9) (ICD10-G62.9), Diabetes mellitus, type 2 (ICD-250.00) (ICD10-E11.9), Elevated blood pressure reading without diagnosis of hypertension (ICD-796.2) (ICD10-R03.0), Diabetic peripheral neuropathy (ICD-250.60) (ICD10-E11.40), Body aches (ICD-780.99) (ICD10-R52), Alcohol Use Disorder (ICD-305.00) (ICD10-F10.10), Anxiety state, unspecified (ICD-300.00) (ICD10-F41.9),

Bipolar disorder, unspecified (ICD-296.7) (ICD10-F31.9), FOSS III (ICD10-F99), COVID-19 Asymptomatic_Tested Positive (ICD10-U07.1), Heroin abuse (ICD-304.00) (ICD10-F11.10), Alcohol abuse (ICD-305.00) (ICD10-F10.10), Benzodiazepine withdrawal (ICD-292.0) (ICD10-F13.239), Benzodiazepine addiction (ICD-304.10) (ICD10-F13.20)"; "pt reports taking metformin. 2E expedite."

33.     Deojanna Ornido, registered nurse ("R.N."), and Veer Babu, doctor of medicine ("M.D."), reported: "Verbal Orders: Detox - CIWA-Ar - Twice Daily [CIWAARBID], Detox - CIWA-B - Q 12hrs [CIWAB12h], Discharge Planning [DP], Provider Initial H & P [PIHP], On Site Referral - Mental Health [MHREF], On Site Referral - Dental [DENT], Detox Housing [DH], Detox - COWS - Q 12hrs [COWS12h], Blood Sugar Check - Twice Daily (0330,1530) [BSBIDI]."

34.     MICHAEL PRINCE was 6'6" tall and weighed 235 pounds.

35.     MICHAEL PRINCE was classified and housed in the jail's detoxification unit.

36.     From July 2, 2023, to July 8, 2023, Defendants DOE 1 to 20, custody and medical staff, failed adequately to house, monitor, and respond to MICHAEL PRINCE's obvious and deteriorating medical condition.

37.     From July 2, 2023, to July 8, 2023, Defendants DOE 11 to 20, medical staff, failed to conduct any withdrawal monitoring of MICHAEL PRINCE.

38.     From July 2, 2023, to July 8, 2023, Plaintiff SOPHIA COSTELLO visited MICHAEL PRINCE three times. During visits, MICHAEL PRINCE complained that the jail was not getting his prescription medication Seroquel and diabetes medications.

39.     From July 2, 2023, to July 8, 2023, MICHAEL PRINCE's medical condition continued to deteriorate and he was visibly ill and required medical care.

40.     On July 3, 2023, at 3:25 p.m., Defendant COLLEEN JACOBSON, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant COLLEEN JACOBSON failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

41.     On July 4, 2023, MICHAEL PRINCE submitted a kite to Jail Psychiatric Services ("JPS"). The request was not acknowledged as "received" by jail staff until July 7, 2023. MICHAEL PRINCE's complaint was not addressed.

42.     Later, MICHAEL PRINCE submitted a Health Services Request ("HSR") form, stating: "I need my saroqual cant sleep going crazy." The request was never acknowledged. MICHAEL PRINCE's complaint was not addressed.

43.     Later, MICHAEL PRINCE submitted another Health Services Request ("HSR") form, stating: "Not getting my saroqual cant sleep." The request was never acknowledged. MICHAEL PRINCE's complaint was not addressed.

44.     At about 3:19 p.m., Defendant SWARN SHARMAN, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant SWARN SHARMAN failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

45.     On July 5, 2023, MICHAEL PRINCE submitted a Health Services Request ("HSR") form, stating: "My feet are hurting from my diabetes." The request was not acknowledged as "received" by jail staff until July 7, 2023. MICHAEL PRINCE's complaint was not addressed.

46.     At about 3:43 a.m., Defendant NKEM AYENI-AARONS, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Breakfast." Defendant NKEM AYENI-AARONS failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

47.     On July 5, 2023, at about 3:02 p.m., Defendant TAMRA SCOTT, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant TAMRA SCOTT failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

48.     On July 6, 2023, at about 4:09 a.m., Defendant RUBY LEMOS, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Breakfast." Defendant RUBY LEMOS failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

49.     At about 2:54 p.m., Defendant TAMRA SCOTT conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant TAMRA SCOTT failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

8

50.     On July 7, 2023, at 4:05 a.m., Defendant RUBY LEMOS conducted a blood glucose test on MICHAEL PRINCE "Before Breakfast." Defendant RUBY LEMOS failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

51.     At about 8:43 a.m., Defendant DOUGLAS CANLAS, a doctor of medicine ("M.D."), conducted an evaluation of MICHAEL PRINCE. Defendant DOUGLAS CANLAS reported: "Chief Complaint[:] evaluation for withdrawal symptoms." Defendant DOUGLAS CANLAS failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

52.     At about 3:03 p.m., Defendant TAMRA SCOTT conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant TAMRA SCOTT failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

53.     At about 3:18 p.m., Sheena Maharaj, a social worker ("S.W."), reported: "6 E Deputy called and reported Pt stated he is hearing voices and has written a few kits. Pt is pending a MHA. Writer changed existing order from routine to urgent."

54.     On July 8, 2023, at about 3:27 a.m., Defendant LORI BORREGO, a licensed vocational nurse ("LVN"), conducted a blood glucose test on MICHAEL PRINCE "Before Breakfast." Defendant LORI BORREGO failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

55.     At about 3:20 p.m., Defendant SWARN SHARMAN conducted a blood glucose test on MICHAEL PRINCE "Before Dinner." Defendant SWARN SHARMAN failed to conduct withdrawal monitoring and to recognize, document, and act on MICHAEL PRINCE's deteriorating health.

56.     In the evening, MICHAEL PRINCE was found unresponsive in his cell, including "appear[ing] life[-]less, pale in color, bluish finger tips, left hand flaccid."

57.     At 6:34 p.m., MICHAEL PRINCE was pronounced dead by later-responding paramedics.

58.     MICHAEL PRINCE's died as a result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's deliberate indifference to his medical needs.

9

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Prince v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

59.     Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 failed timely to observe, summon care, and/or treat MICHAEL PRINCE's medical emergency but could have done so, including by responding to his complaints and obvious medical condition or by transferring him to an outside medical facility that could properly and timely diagnose and provide treatment.

60.     From July 2, 2023, to July 8, 2023, while MICHAEL PRINCE was incarcerated at the jail, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were subject to the terms of a consent decree entered in *Mays v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN.

61.     On August 15, 2023, the "Fourth Monitoring Report of the Medical Consent Decree" was entered in *Mays*. (*Mays* ECF No. 168-1.) Therein, the monitoring reports specifically referenced and identified MICHAEL PRINCE's death as a violation of the terms of the consent decree, including stating: "In early July, two patients died on the detox unit. . . . [R]ecord review showed that for one patient housed on the detox unit, nurses did not conduct any withdrawal monitoring during the six days prior to his death. Health care leadership must provide adequate supervision to be aware in real time that monitoring is not taking place and to intervene to ensure that withdrawal monitoring is conducted."; and "On 7/2/2023, a patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not monitor the patient for the six days the patient was in the unit. The patient died on the morning of 7/8/2023." (*Mays* ECF No. 168-1 at 15.)

## POLICY / CUSTOM ALLEGATIONS

62.     Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Specifically, Defendant JIM COOPER is and was responsible for the provision of medical and mental health care to inmates/prisoners in his custody at

10

Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMEN's jail facilities, including assessment of inmates for medical emergencies, medical needs, and mental health needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

63.     Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT Sheriff since December 2022.

64.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     failure adequately to observe, monitor, and supervise inmates within the jail;

(b)     failure adequately to staff the jail with necessary officials, staff, and personnel;

(c)     failure adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail;

(d)     failure adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs; and

(e)     failure adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs.

65.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20, were deliberately indifferent to MICHAEL PRINCE's safety and health, and knew or should have known that MICHAEL PRINCE was at risk of harm, based on the following circumstances:

(a)     jail staff, including Defendants DOE 1 to 20, failed adequately to observe, monitor, and supervise inmates within the jail, including MICHAEL PRINCE;

(b)     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, failed adequately to staff the jail with necessary officials, staff, and personnel, including during MICHAEL PRINCE's incarnation;

(c)     jail staff, including Defendants DOE 1 to 20, failed adequately to detect and

11

investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail, including MICHAEL PRINCE's medical need;

        (d)    jail staff, including Defendants DOE 1 to 20, failed adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs, including MICHAEL PRINCE's medical need; and

        (e)    jail staff, including Defendants DOE 1 to 20, failed adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs, including MICHAEL PRINCE's medical need.

      66.    <u>National Standards</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are non-compliant with widely-accepted jail standards, including as set forth by the National Commission on Correctional Health Care's ("NCCHC") "Standards for Health Services in Jails," including related to "Access to Care" (J-A-01).

      67.    <u>*Mays* Consent Decree</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN. Therein, the plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities. In June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*, to changes to jail staffing, facilities, inmate health services, and custodial practices, including the creation and enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act ("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space, and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also* <https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and

12

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the Consent Decree. (*Mays* ECF No. 149.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT have failed to achieve compliance with the terms of the consent decree, as demonstrated by monitoring reports and the 2022–23 Sacramento County Grand Jury. For example:

(a)      The First Monitoring Report of Medical Experts, filed January 20, 2021, found, for 75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not evaluated. (*Mays* ECF No. 136-1.) Specifically, the review's findings were "deeply concerning." (*Id*.) For example, "[t]here are serious and systemic issues resulting in harm to patients, including hospitalizations and death" (*id*. at 7–8), "[t]he sick call system does not provide timely access to care" (*id*. at 8), "[t]here are excessive delays in transporting patient[s] to the hospital" (*id*. at 9), and "[t]here are serious nursing and medical quality of care issues" (*id*. at 9). The report made an "alarming finding [] that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted in hospitalizations and deaths" and that, even when physicians are notified, "physicians also minimized patient clinical findings and failed to adequately treat their underlying chronic medical conditions." (*Id*. at 9.) "These cases may reflect a wider cultural issue at the jail in how health care personnel view their obligations to provide timely, appropriate and compassionate care to patients." (*Id*. at 9.)

(b)      The Second Monitoring Report of Medical Experts, filed October 4, 2021, found, for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions (9%) were not evaluated. (*Mays* ECF No. 149-1 at 13.) Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." (*Id*. at 12.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 11–12.) The report found that "there has been custody

13

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Prince v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." (*Id*. at 9.)

(c)     On March 1, 2022, *Mays* class counsel sent a letter to Defendant COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail overcrowding" and reports that "[p]eople told us that they were treated 'like animals' when they asked the deputies passing by … how they could access the health care services they needed." (*Mays* ECF No. 153-4.)

(d)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. (*Mays* ECF No. 162-1 at 14.) Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." (*Id*. at 13.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 10–12.) The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." (*Id*. at 6.) The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." (*Id*. at 28.)

(e)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). (*Mays* ECF No. 168-1 at 6.) Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack

14

of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." (*Id.*) For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." (*Id*. at 11–12.) A "detailed case reviews show[ed] multiple lapses in care in many records." (*Id*. at 13 n.21.) The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." (*Id*. at 22.)

68.   <u>Inadequate Medical Diagnosis, Monitoring, and Care</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates, including failure to respond to immediate medical needs. For example:

(a)   The *Mays* Consent Decree Monitoring Reports of the Medical Experts describe and document persistent and numerous incidents and case reviews where jail staff, including both custody staff and medical staff, failed timely to observe and respond to inmates' immediate medical needs. (*Mays* ECF No. 136-1; *Mays* ECF No. 149-1; *Mays* ECF No. 162-1; *Mays* ECF No. 168-1.) Each of these monitoring reports, including any subsequently-issued monitoring reports, and the incidents described therein, are expressly incorporated herein.

(b)   On May 27, 2023, 47-year-old inmate Norman Fisher Jr. died of "septic shock," "Klebsiella bacteremia," "pneumonia," and "non-traumatic acute kidney failure" at the Sacramento County Jail. The inmate's health significantly deteriorated over the course of several weeks, without intervention by jail staff. The ill inmate's fellow inmates, including his cellmate and floor trustee, attempted to obtain care for the inmate on several occasions, without avail. The custody staff discouraged complaints and the medical staff failed to address the inmate's immediate medical need. The jail staff were deliberately indifferent to the inmate's escalating symptoms and complaints throughout May 2023,

15

until he died on May 27, 2023.

(c)      On July 24, 2022, a 67-year-old inmate (Patient #35) died of sepsis at the Sacramento County Jail. On July 12, 2022, the inmate was admitted to the jail with a medical history including opioid substance use disorder, untreated intestinal cancer, 60 lbs. weight loss, and back surgery. On July 13, 2022, the inmate submitted a health request that he had sepsis and a heart infection but medical staff did not timely address the health request. On July 15, 2022, a medical provider saw the inmate who reported weight loss, intestinal cancer, inability to tolerate solid foods without vomiting, and rectal bleeding—symptoms which warranted immediate admission to the hospital for medical evaluation. The medical provider ordered labs and follow-up in one month, treating the inmate's condition as routine. The inmate died. On August 22, 2022, the Medical Director completed a preliminary mortality review which did not identify lapses in care. The *Mays* Medical Expert monitors found: "The Medical Director's failure to recognize, acknowledge and address serious lapses in medical care quality is likely not to result in improvement in medical care quality for patient[s] in custody." (*Mays* ECF No. 168-1 at 138–139; *Mays* ECF No. 162-1 at 79–84.)

(d)      On February 15, 2022, inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. (*Mays* ECF No. 153-4; *Mays* ECF No. 162-1 at 76.) A civil rights lawsuit was filed. (*Galley v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:23-cv-00325-WBS-AC.) The case remains pending.

(e)      On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed—but jail staff failed to recognize—that Noble did not eat or drink for two days prior to his death. (SCSD Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.)

16

1        (f)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County

2  Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from

3  mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical

4  screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug

5  screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde

6  was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2,

7  2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate,

8  including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling

9  unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back

10  up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored the

11  threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for

12  detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental

13  health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for

14  a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door,"

15  "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he

16  was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him.

17  An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore

18  him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse.

19  (SCSD Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-

20  Welde-.pdf>.)

21        (g)     On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at

22  the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored

23  and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the

24  cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying

25  on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to

26  expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a

27  day." (SCSD Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-

28  Overbey.pdf>.)

(h)     On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. (SCSD Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.)

69.     Failure to Report In-Custody Deaths: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT sometimes fail to report the deaths of persons who sustain critical injuries while in-custody at jail facilities but later die outside of jail facilities. For example, on June 16, 2017, inmate Clifton Harris was beaten into a coma by his cellmate in the Sacramento County Main Jail. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT "released" Harris from custody while he was comatose but before he died eight months later as a result of the injuries he sustained in-custody. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT did not report Harris' death as an in-custody death. (Sacramento News & Review, *The Dungeon Master* (Sep. 22, 2020), available at: <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/>; Sacramento Bee, *Sacramento CA sheriff won't tell public about jail deaths* (Aug. 17, 2021), available at: <https://www.sacbee.com/news/local/article253422244.html>.)

70.     Delayed Investigations & Inadequate Re-Training: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents, injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy violations and the need for new or different policies and procedures to prevent future harm. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT were obligated but failed timely to create and implement policies related to "Review of Custody Death,"

18

pursuant to the *Mays* Consent Decree. For example:

(a)     The Report on Suicide Prevention Practices Within the Sacramento County Jail System, filed July 31, 2018, found that "the Sacramento County Jail System does *not* currently engage in a viable mortality review process…" (*Mays* ECF No. 1-4 at 57.)

(b)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found "noncompliance." (*Mays* ECF No. 136-1 at 50–52.) The First Monitoring Report of Suicide Prevention Practices, filed January 20, 2021, found: "This provision is in Non-Compliance." (*Mays* ECF No. 136-3 at 76–77.)

(c)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, "[n]one of the reviews assessed the appropriateness of the care provided, the effectiveness of relevant policies and procedures, or identified opportunities for improvement in the delivery of care in order to prevent future deaths" and "[t]here were no corrective action plans developed for any of the deaths, which seems largely due to the failure to recognize that one was needed." (*Mays* ECF No. 149-1 at 64.)

(d)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, that "reviews still lack identification and analysis of lapses in care, systemic issues, and opportunities for improvement" and that, "*in several cases, significant lapses in care and system issues were unrecognized, glossed over, or ignored all together.*" (*Mays* ECF No. 162-1 at 13.)

(e)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found "[l]ack of evaluation of medical care quality, including mortality reviews." (*Mays* ECF No. 168-1 at 6.) Specifically, "[i]n the over 3 years since the Consent Decree has been in effect, the County has not developed and implemented any system for evaluation of medical care quality to ensure that it meets contemporary standards of medical care." (*Id*. at 13.) For example, "*identification and evaluation of medical care quality is virtually absent, even in mortality records that show multiple lapses in care*" and "[c]orrective action plans are exclusively devoted to system and nursing issues, not medical care quality issues." (*Id*. at 13.) "This has been a persistent issue throughout monitoring resulting in adverse patient

19

1  outcomes." (*Id.* at 13–14.)

2      71.    Media Reporting on Jail Conditions: Defendants COUNTY OF SACRAMENTO and

3  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's deficient policies and customs are

4  documented in numerous media accounts and reporting. For example:

5          (a)    The Sacramento Bee, *Sacramento Sheriff Jim Cooper is mismanaging the jail and*

6  *impairing care for inmates* (Oct. 20, 2023), available at: <https://www.sacbee.com/opinion/op-

7  ed/article280720760.html> ("There are pervasive, well-documented examples of sheriff staff postponing

8  specialty care, overriding physician orders, cutting corners on required medical screenings, ignoring

9  medical evaluation requests, neglecting psychiatrically ill patients and skipping entire days of medication

10 distributions. This undermining of medical professionals and obstruction of constitutionally-mandated

11 medical care should never occur, and yet it has become routine in Sacramento County jails.").

12         (b)    CapRadio, *Grand jury calls for Sacramento County jail improvements, warns of*

13 *receivership risk* (June 5, 2023), available at: <https://www.capradio.org/articles/2023/06/05/grand-jury-

14 calls-for-sacramento-county-jail-improvements-warns-of-receivership-risk/> ("Sacramento County risks

15 losing control of its two jails to a court-appointed receiver if it doesn't improve detention conditions, a

16 grand jury warned in a report…").

17         (c)    The Sacramento Bee, *Sacramento Main Jail Allows Inmates to Suffer During*

18 *COVID* (Nov. 9, 2021), available at: <https://www.sacbee.com/opinion/op-ed/article255652546.html>

19 ("Sacramento is on track to have the deadliest jail per capita in California.").

20         (d)    Sacramento News & Review, *The Dungeon Master* (Sep. 22, 2020), available at:

21 <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/> ("Sacramento County had the

22 third most jail deaths in the state last year," despite "Sacramento County ha[ving] a smaller population

23 than [] seven [other] counties"; County jail facilities have "lost more than 40 people in his jails over the

24 past decade, according to state justice data and news accounts…").

25         (e)    *Marshall v. Superior Court*, No. S263043, 2020 Cal. LEXIS 4730, at *10 (Cal.

26 July 15, 2020) (Liu, J., dissenting) ("Based on the allegations contained in the 54 inmate declarations

27 before us, petitioners have made a prima facie case that the Sacramento County Sheriff is acting with

28 deliberate indifference to the health and safety of the inmates in violation of the Eighth Amendment to

the federal Constitution. The declarations paint a grim picture of the inmates' conditions of confinement." (internal citations omitted).)

72.     Records Destruction Policies/Failure to Retain Records: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain an official written policy, also known as a "General Order," concerning "Destruction of Records" and "Complaints and Disciplinary Policies and Procedures." The records-destruction policy expressly provides: "Records of complaints, investigations and dispositions shall be retained by Internal Affairs for a period of at least five and one half years." Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER actively employ the records-destruction policies to destroy records as soon as permitted by policy, including records documenting inmate deaths and internal affairs records. For example, as of January 2022, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to retain records concerning in-custody deaths at jail facilities older than 2017. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's records-destruction policies and practices obfuscate histories of indifference and misconduct, especially when combined with failures to report/investigative delays relating to in-custody incidents.

73.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

74.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of MICHAEL PRINCE

21

75.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates was a moving force behind and contributed to the death of MICHAEL PRINCE

**FIRST CLAIM**

**Deliberate Indifference / Special Relationship**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

76.     Plaintiff ESTATE OF MICHAEL PRINCE asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

77.     The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

78.     Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 inadequately supervised, monitored, and responded to MICHAEL PRINCE, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the U.S. Constitution.

79.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to MICHAEL PRINCE, in violation of the Fourteenth Amendment to the U.S. Constitution.

80.     Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS,

DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

81.     MICHAEL PRINCE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL PRINCE to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

## SECOND CLAIM

### Title II of the Americans with Disabilities Act

### (42 U.S.C. § 12101, *et seq.*)

82.     Plaintiff ESTATE OF MICHAEL PRINCE (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

83.     The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

23

84.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT each qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. MICHAEL PRINCE had a physical or mental impairment that substantially limited one or more major life activities and had a record of such an impairment.

85.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 failed reasonably to accommodate MICHAEL PRINCE's disability, where they could have provided a reasonable accommodation, including by: (a) providing MICHAEL PRINCE with necessary medical care or treatment; (b) transferring MICHAEL PRINCE to a facility that could provide necessary medical care or treatment; and/or (c) classifying and housing MICHAEL PRINCE based on his impairment, where he would receive adequate and necessary medical care or treatment, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

86.     MICHAEL PRINCE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL PRINCE to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

## THIRD CLAIM

### Section 504 of the Rehabilitation Act

### (29 U.S.C. § 701, *et seq.*)

87.     Plaintiff ESTATE OF MICHAEL PRINCE (pursuant to Cal. Code Civ. Proc. § 377.30)

24

asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.

88.     The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

89.     Defendants COUNTY OF SACRAMENTO AND SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A)

and 28 C.F.R. § 35.104. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. receive federal

financial assistance. MICHAEL PRINCE had a physical or mental impairment that substantially limited

one or more major life activities and had a record of such an impairment.

90.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON,

SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS

CANLAS, LORI BORREGO, and DOE 1 to 20 failed reasonably to accommodate MICHAEL

PRINCE's disability, where they could have provided a reasonable accommodation, including by: (a)

providing MICHAEL PRINCE with necessary medical care or treatment; (b) transferring MICHAEL

PRINCE to a facility that could provide necessary medical care or treatment; and/or (c) classifying and

housing MICHAEL PRINCE based on his impairment, where he would receive adequate and necessary

medical care or treatment, with deliberate indifference or reckless disregard, in violation of the

Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

91.     MICHAEL PRINCE was injured as a direct and proximate result of Defendants

COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

1  LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL

2  PRINCE to receive compensatory/survival and nominal damages against Defendants COUNTY OF

3  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM

4  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

5  HEALTHCARE STAFFING SERVICES, INC.

6        WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

7                                    **FOURTH CLAIM**

8                   **Unwarranted Interference with Familial Association**

9                   **(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

10        92.    Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

11  COSTELLO, and VALERIE PRINCE assert this Claim against Defendants COUNTY OF

12  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM

13  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

14  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

15  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

16  BORREGO, and DOE 1 to 20.

17        93.    The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the

18  extent relevant and as if fully set forth in this Claim.

19        94.    Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

20  COSTELLO, and VALERIE PRINCE shared a close relationship and special bond with MICHAEL

21  PRINCE, which included deep attachments, commitments, and distinctively personal aspects of their

22  lives and was typical of a loving relationship, prior to his death.

23        95.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

24  DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

25  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON,

26  SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS

27  CANLAS, LORI BORREGO, and DOE 1 to 20 caused the unwarranted interference with, and premature

28  termination of, Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

                                          26

1  COSTELLO, and VALERIE PRINCE's familial association with MICHAEL PRINCE, in the violation

2  of the Fourteenth Amendment to the U.S. Constitution.

3      96.   Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

4  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN

5  JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS,

6  DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions were motivated by

7  evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly

8  or oppressively done.

9      97.   Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

10 COSTELLO, and VALERIE PRINCE were injured as a direct and proximate result of Defendants

11 COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

12 COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

13 MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

14 SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

15 LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling them to receive

16 compensatory/wrongful death and nominal damages against Defendants COUNTY OF SACRAMENTO,

17 SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE

18 SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

19 SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

20 TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20; and

21 punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

22 MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

23 COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

24 LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

25      WHEREFORE, Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C.,

26 SOPHIA COSTELLO, and VALERIE PRINCE pray for relief as hereunder appears.

27 \ \ \

28 \ \ \

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

98.   Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

99.   The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

100.   Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE shared a close relationship and special bond with MICHAEL PRINCE, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death.

101.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE's familial association with MICHAEL PRINCE, in the violation of the First Amendment to the U.S. Constitution.

102.   Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions were motivated by

28

1  evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly

2  or oppressively done.

3      103.   Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

4  COSTELLO, and VALERIE PRINCE were injured as a direct and proximate result of Defendants

5  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

6  COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

7  MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

8  SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

9  LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling them to receive

10  compensatory/wrongful death and nominal damages against Defendants COUNTY OF SACRAMENTO,

11  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE

12  SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

13  SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

14  TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20; and

15  punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

16  MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

17  COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

18  LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

19      WHEREFORE, Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C.,

20  SOPHIA COSTELLO, and VALERIE PRINCE pray for relief as hereunder appears.

21                          **SIXTH CLAIM**

22                   **Failure to Summon Medical Care**

23                     **(Cal. Gov. Code § 845.6)**

24      104.   Plaintiff ESTATE OF MICHAEL PRINCE asserts this Claim (pursuant to California

25  Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

26  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, COLLEEN JACOBSON, SWARN

27  SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

28  LORI BORREGO, and DOE 1 to 20.

105.    The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

106.    Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 2 0knew or had reason to know that MICHAEL PRINCE was in need of immediate medical care and failed to take reasonable action to summon medical care, in violation of California Government Code § 845.6.

107.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to MICHAEL PRINCE, in violation of California Government Code § 845.6.

108.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

109.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

110.    MICHAEL PRINCE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

30

1  SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

2  LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL

3  PRINCE to receive compensatory/survival and nominal damages against Defendants COUNTY OF

4  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM

5  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

6  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

7  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

8  BORREGO, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM

9  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

10  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

11  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

12  BORREGO, and DOE 1 to 20.

13  WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

14  **SEVENTH CLAIM**

15  **Tom Bane Civil Rights Act**

16  **(Cal. Civ. Code § 52.1)**

17  111.   Plaintiffs ESTATE OF MICHAEL PRINCE (pursuant to California Code of Civil

18  Procedure § 377.30), ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA

19  COSTELLO, and VALERIE PRINCE assert this Claim against Defendants COUNTY OF

20  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM

21  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

22  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

23  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

24  BORREGO, and DOE 1 to 20.

25  112.   The allegations of the preceding paragraphs 1 to 110 are realleged and incorporated, to the

26  extent relevant and as if fully set forth in this Claim.

27  Deliberate Indifference / Special Relationship

28  113.   Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

31

TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 inadequately supervised, monitored, and responded to MICHAEL PRINCE, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

114.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to MICHAEL PRINCE, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

<u>Unwarranted Interference with Familial Association</u>

115.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE's familial association with MICHAEL PRINCE, with deliberate indifference or reckless disregard of rights protected by the First and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

<u>Failure to Summon Medical Care</u>

116.    Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 knew or had reason to know that MICHAEL PRINCE was in need of immediate medical care and failed to take reasonable action to summon medical care, with deliberate indifference or reckless disregard of rights protected by California Government Code § 845.6.

1    117.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

2 DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

3 STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained

4 policies or customs of action and inaction resulting in harm to MICHAEL PRINCE, with deliberate

5 indifference or reckless disregard of rights protected by California Government Code § 845.6.

6                                         Failure to Staff and Monitor

7    118.    Defendants DOE 1 to 20 failed to conduct visual safety checks and remain accessible to

8 MICHAEL PRINCE, with deliberate indifference or reckless disregard of rights protected by California

9 Code of Regulations, tit. 15 § 1027.

10    119.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

11 DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

12 STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained

13 policies or customs of action and inaction resulting in harm to MICHAEL PRINCE, with deliberate

14 indifference or reckless disregard of rights protected by California Code of Regulations, tit. 15 § 1027.

15                                      (Allegations Common to All Theories)

16    120.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

17 DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

18 SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable,

19 through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a),

20 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of

21 employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

22 MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

23 COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

24 LEMOS, DOUGLAS CANLAS, LORI BORREGO, and/or DOE 1 to 20.

25    121.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

26 STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN

27 JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS,

28 DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions constituted

oppression, fraud, and/or malice resulting in great harm.

122.   MICHAEL PRINCE and Plaintiffs ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE to receive compensatory/survival and treble damages and civil/statutory penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE pray for relief as hereunder appears.

## EIGHTH CLAIM

### Intentional Infliction of Emotional Distress

123.   Plaintiff ESTATE OF MICHAEL PRINCE asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

34

1 TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

2        124.    The allegations of the preceding paragraphs 1 to 75 are realleged and incorporated, to the

3 extent relevant and as if fully set forth in this Claim.

4        125.    Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

5 TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 engaged

6 in outrageous conduct, including by inadequately supervising, monitoring, and responding to MICHAEL

7 PRINCE in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the

8 California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15

9 § 1027, with intent or reckless disregard of the probability that MICHAEL PRINCE would suffer

10 emotional distress and he did suffer severe emotional distress.

11        126.    Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

12 STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. engaged in

13 outrageous conduct, including maintaining policies or customs of action and inaction which resulted in

14 harm to MICHAEL PRINCE in violation of the Fourteenth Amendment to the U.S. Constitution; Article

15 I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code

16 of Regulations, tit. 15 § 1027, with intent or reckless disregard of the probability that MICHAEL

17 PRINCE would suffer emotional distress and he did suffer severe emotional distress.

18        127.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

19 STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN

20 JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS,

21 DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions constituted

22 oppression, fraud, and/or malice resulting in great harm.

23        128.    MICHAEL PRINCE was injured as a direct and proximate result of Defendants

24 COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

25 COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

26 MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

27 SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

28 LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL

1  PRINCE to receive compensatory/survival and punitive damages against Defendants JIM COOPER,

2  MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

3  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

4  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

5  BORREGO, and DOE 1 to 20.

6  WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

7  **NINTH CLAIM**

8  **Negligence**

9  129.   Plaintiff ESTATE OF MICHAEL PRINCE asserts this Claim (pursuant to California

10  Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

11  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

12  dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

13  COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

14  LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

15  130.   The allegations of the preceding paragraphs 1 to 128 are realleged and incorporated, to the

16  extent relevant and as if fully set forth in this Claim.

17  131.   Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

18  TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 owed a

19  duty of care to MICHAEL PRINCE and breached a duty, including by inadequately supervising,

20  monitoring, and responding to MICHAEL PRINCE in violation of the Fourteenth Amendment to the

21  U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code §

22  845.6; and California Code of Regulations, tit. 15 § 1027.

23  132.   Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

24  STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. owed a duty of

25  care to MICHAEL PRINCE, including a special relationship with MICHAEL PRINCE, as a jailer, and/or

26  Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA

27  SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20, as an employer,

28  and breached that duty, including by maintaining policies or customs of action and inaction which

36

resulted in harm to MICHAEL PRINCE in violation of the Fourteenth Amendment to the U.S.

Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6;

and California Code of Regulations, tit. 15 § 1027.

133.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. owed a duty of care and

breached that duty, including by maintaining policies or customs of action and inaction which resulted in

harm to MICHAEL PRINCE in violation of the California Government Code § 845.6 and California

Code of Regulations, tit. 15 § 1027.

134.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable,

through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a),

845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of

employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

LEMOS, DOUGLAS CANLAS, LORI BORREGO, and/or DOE 1 to 20.

135.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN

JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS,

DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions constituted

oppression, fraud, and/or malice resulting in great harm.

136.    MICHAEL PRINCE was injured as a direct and proximate result of Defendants

COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

1  LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF MICHAEL

2  PRINCE to receive compensatory/survival damages against Defendants COUNTY OF SACRAMENTO,

3  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE

4  SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

5  SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

6  TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20; and

7  punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba

8  MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

9  COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY

10  LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20.

11  WHEREFORE, Plaintiff ESTATE OF MICHAEL PRINCE prays for relief as hereunder appears.

12  **TENTH CLAIM**

13  **Wrongful Death**

14  **(Cal. Code Civ. Proc. § 377.60)**

15  137.    Plaintiffs LANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C. asserts

16  this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

17  DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

18  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON,

19  SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS

20  CANLAS, LORI BORREGO, and DOE 1 to 20.

21  138.    The allegations of the preceding paragraphs 1 to 136 are realleged and incorporated, to the

22  extent relevant and as if fully set forth in this Claim.

23  139.    Defendants COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS,

24  TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20 caused

25  MICHAEL PRINCE's death by wrongful act and neglect, including by negligently and inadequately

26  supervising, monitoring, and responding to MICHAEL PRINCE in violation of the Fourteenth

27  Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California

28  Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027.

140.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. caused MICHAEL PRINCE's death by wrongful act and neglect, including by negligently maintaining policies or customs of action and inaction which resulted in harm to MICHAEL PRINCE in violation of the Fourteenth Amendment to the U.S. Constitution; Article I, Section 7(a) of the California Constitution; California Government Code § 845.6; and California Code of Regulations, tit. 15 § 1027.

141.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and/or DOE 1 to 20.

142.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

143.    MICHAEL PRINCE died as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20's actions and inactions, entitling Plaintiffs LANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C. to receive compensatory/wrongful death damages and expenses

39

1  against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

2  DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

3  SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON,

4  SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS

5  CANLAS, LORI BORREGO, and DOE 1 to 20; and punitive damages against Defendants JIM

6  COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

7  MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN

8  SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS,

9  LORI BORREGO, and DOE 1 to 20.

10     WHEREFORE, Plaintiffs LANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., and J.C.

11  pray for relief as hereunder appears.

12                                    **PRAYER FOR RELIEF**

13     WHEREFORE, Plaintiffs ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY

14  COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE seek Judgment as

15  follows:

16     1.     For an award of compensatory, general, special, and nominal damages (including survival

17  damages and wrongful death damages under federal and state law) against Defendants COUNTY OF

18  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM

19  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

20  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

21  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

22  BORREGO, and DOE 1 to 20, in excess of $30,000,000, according to proof at trial;

23     2.     For an award of exemplary/punitive damages against Defendants JIM COOPER, MAXIM

24  HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

25  HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN,

26  NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI

27  BORREGO, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because

28  their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or

40

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Prince v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

      3.      For funeral and/or burial expenses;

      4.      For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., COLLEEN JACOBSON, SWARN SHARMAN, NKEM AYENI-AARONS, TAMRA SCOTT, RUBY LEMOS, DOUGLAS CANLAS, LORI BORREGO, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code § 818);

      5.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

      6.      For interest; and

      7.      For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: February 12, 2024

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiffs
    ESTATE OF MICHAEL PRINCE,
    ELANO COSTELLO, DONNY COSTELLO,
    M.C., I.C., D.C., J.C., SOPHIA COSTELLO,
    and VALERIE PRINCE

**JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF MICHAEL PRINCE, ELANO COSTELLO, DONNY COSTELLO, M.C., I.C., D.C., J.C., SOPHIA COSTELLO, and VALERIE PRINCE.

Dated: February 12, 2024

Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF MICHAEL PRINCE,
ELANO COSTELLO, DONNY COSTELLO,
M.C., I.C., D.C., J.C., SOPHIA COSTELLO,
and VALERIE PRINCE

42